IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHANE ALLEN PENNY                                                    PLAINTIFF

V.                          CASE NO. 5:18-CV-05021

SHERIFF SHAWN HOLLOWAY, Benton
County, Arkansas; LIEUTENANT
HOLT; DAWN OSBORN, Kitchen
Supervisor, Trinity Food Group,
THELMA SNODGRASS, Kitchen Lead,
Trinity Food Group; and
TRINITY FOOD GROUP                                                  DEFENDANTS

## OPINION AND ORDER

Plaintiff, Shane A. Penny, filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Benton County Detention Center ("BCDC"). He names as Defendants Sheriff Holloway, Lieutenant Holt, Dawn Osborn, Thelma Snodgrass, and Trinity Food Group.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### I. BACKGROUND

According to the allegations of the Complaint (Doc. 7), on January 10-11, 2018, kitchen staff did not follow food safety rules, causing meat to spoil and resulting in most of the jail "being poisoned." Plaintiff asserts that the trustees do not care about the inmates' safety.

1

Plaintiff alleges the food carts are merely rinsed off and are never sanitized. He also contends the coolers used for drinks are only rinsed and never taken apart and sanitized. He alleges the food sits on the carts for hours at a time, and the temperature of the food is never taken. Further, he alleges the trustees are allowed to serve food without gloves.

With respect to Sheriff Holloway, Plaintiff alleges he does not hold his employees accountable. Plaintiff believes Lieutenant Holt should be held accountable for not supervising the kitchen contractors. Plaintiff maintains that Trinity should be held liable for allowing employees to act as they "wish and not follow laws." Finally, Plaintiff alleges Dawn Osborn and Thelma Snodgrass should be held liable for allowing tainted meat to be served.

Plaintiff also asserts a denial of medical care claim. Plaintiff states the kiosk used to submit requests for medical treatment was down. Plaintiff alleges he asked the deputies several times to see the medical staff and was told they were too busy. Plaintiff asserts that he was vomiting blood for two days.

Plaintiff indicates that the inmates were provided with approximately 12 ounces of Gatorade a day. Plaintiff alleges Sheriff Holloway and Lieutenant Holt neglected their duty to provide him with access to medical treatment and medications.

Plaintiff sues the Defendants in both their individual and official capacities. As relief, he asks for compensatory damages and punitive damages. He also asks that the kitchen be subject to tighter regulations to ensure no food poising incidents occur again. He also asks that the jail be made to operate in a much more humane way.

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

However, mere conclusory allegations with no supporting factual averments are insufficient to state a claim upon which relief can be based. *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). To the extent Plaintiff attempts to assert a negligence claim, it is insufficient as a matter of law.

### A. The Food Poisoning Claim

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.[1] U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851

---

[1] Plaintiff is a pretrial detainee. However, the Eighth Circuit has consistently applied the Eighth Amendment to conditions of confinement claims brought by pretrial detainees. *See, e.g., Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.") (internal quotation marks and citation omitted).

4

(1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

To state an Eighth Amendment claim, the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the detention facility that created a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994) (quoting *Wilson v. Sieter*, 501 U.S. 294 (1991)).

The deliberate indifference standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (noting that the objective component is "contextual and responsive to contemporary standards of decency") (quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994). The

subjective component "requires proof of a reckless disregard of a known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (citation omitted).

In this case, Plaintiff's only allegation is that he was served contaminated food on a single occasion. Plaintiff does not allege he was routinely served contaminated food or that food was routinely prepared in a manner presenting an immediate danger to his health. *See, e.g., Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) ("Wishon has presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food.").

In *Islam v. Jackson*, 782 F. Supp. 1111, 1114-15 (E.D. Vir. 1992), the court held that serving one meal contaminated with maggots and meals under unsanitary conditions for thirteen days was not cruel and unusual punishment. In *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988), a case nearly identical to the one before us, the Fifth Circuit held that "a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute violations of the constitutional rights of the affected prisoners." *Id.* In so holding, the Court noted that it was confronted with "a single incident of mass food poisoning of the kind occasionally experienced by those in military service or in other institutional settings, as well as individually in the more routine course of daily life." *Id.; see also Bennett v. Misner*, 2004 WL 2091473, at *20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation."). Plaintiff's allegations that he was served

contaminated food on a single occasion and became temporarily ill as a result are insufficient to state a claim of constitutional dimension.

Even if the Defendants violated the state food handling regulations, it has been held that state and/or federal safety regulations do not "establish a standard for Eighth Amendment violations." *Kulkay v. Roy*, 847 F.3d 637, 645 (8th Cir. 2017). Further, the Eighth Circuit stated that "[t]he mere existence of state and federal safety regulations does not charge prison officials with knowledge of potentially unsafe conditions in their facility." *Id.* Nor is the Court aware of any precedent holding that the failure of trustees to wear gloves while serving food constitutes an Eighth Amendment violation. *See, e.g. Henderson v. Greeley*, 2015 WL 1280312, at *12 (W.D. Ark. Mar. 20, 2015).

Further, with respect to Sheriff Holloway and Lieutenant Holt, Plaintiff has not alleged they directly participated in the alleged unconstitutional violations. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citation omitted). "A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Instead, the supervisor must be personally involved in the alleged constitutional violation or his corrective inaction must constitute deliberate indifference towards the constitutional violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

In *George*, the Fifth Circuit stated that "[i]f prisoners regularly and frequently suffer from food poisoning with truly serious medical complications as a result of particular, known unsanitary practices which are customarily followed by the prison food service organization, and the authorities without arguable justification refuse to attempt remedial

measures, the requisite indifference might well be manifested or inferred." *Id.* at 707. In this case, Plaintiff has made no allegations sufficient to establish a basis for supervisory liability.

Plaintiff's official capacity claims are the equivalent of claims against Benton County. "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Grayson v. Ross*, 454 F.3d 802, 810-811 (8th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff has not alleged the existence of any custom or policy of Benton County that was a moving force behind the alleged constitutional violations.

### B. The Denial of Medical Care Claim

The Eighth Amendment deliberate indifference standard also applies to denial of medical treatment claims. To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

"'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Plaintiff states that he could not obtain medical care because the kiosk was broken and unidentified deputies, who are not parties to this lawsuit, said the nurse

was too busy to see him. Plaintiff does not allege he tried to submit a written request for medical care or that he made a verbal request to anyone up the chain of command.

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

Here, Plaintiff has not alleged that any of the named Defendants intentionally denied him access to medical care. Nor has he alleged that any delay in his obtaining treatment was attributable to any policy of custom of Benton County. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997). Instead, his allegations amount to nothing more than an indication that the medical staff was overwhelmed by the number of prisoners suffering from food poisoning and that the deputies informed him that medical staff was "too busy." This is insufficient to establish deliberate indifference to Plaintiff's serious medical needs on the part of any of the named Defendants.

## IV. CONCLUSION

No plausible claims are stated. This case is **DISMISSED WITHOUT PREJUDICE.** *See* 28 U.S.C. § 1915(e)(2)(B)(i-ii) (*in forma pauperis* action, or any portion of it, may be dismissed at any time due to frivolousness or for failure to state a claim).

The dismissal of this case constitutes a strike within the meaning of the Prison Litigation Reform Act. The **Clerk** is directed to place a § 1915(g) strike flag on this case.

**IT IS SO ORDERED** on this 1st day of March, 2018.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE